IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN RACKLEY, | ) | Case No. 1:16-cv-1845 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| BRIGHAM SLOAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.     Introduction

Petitioner Steven Rackley seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions and sentences in *State v. Rackley*, Case No. CR-12-563955-A violated his constitutional rights.  ECF Doc. No. 1.  Warden Brigham Sloan,[1] the respondent, has filed a return of writ.  ECF Doc. 28.  Rackley has filed a traverse.  ECF Doc. 28.

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Rackley's petition or other case-dispositive motions.  Because all of Rackley's seven grounds for relief are barred by the statute of limitations and have been procedurally defaulted, I recommend that the Court DENY his petition.

---

[1] Brigham Sloan is the warden of Lake Erie Correctional Institution, where Rackley is incarcerated.  ECF Doc. 1 at Page ID# 1.

II.     **State Court History**

    A.     **State Trial Court Conviction**

A Cuyahoga County, Ohio grand jury issued an indictment on June 27, 2012 charging Rackley with two counts of aggravated murder, two counts of aggravated robbery, one count of kidnapping and one count of tampering with evidence, all arising out of an incident with Mitchell I. Perry on or about November 8, 2006.  Count One alleged aggravated murder in violation of Ohio Rev. Code § 2903.01(A), and Count Two alleged aggravated murder in violation of Ohio Rev. Code § 2903.01(B).  Both counts alleged that Rackley purposely caused Perry's death. Count One alleged he did so with prior calculation and design; Count Two contended he caused Perry's death while committing or attempting to commit or while fleeing after committing or attempting to commit an aggravated robbery.  Count Three alleged that Rackley kidnapped Perry in violation of Ohio Rev. Code §2905.01(A)(2).  Count Four charged Rackley with aggravated robbery involving a deadly weapon, in violation of Ohio Rev. Code § 2911.01(A)(1).  Count Five charged him with aggravated robbery in which serious physical harm was involved, in violation of Ohio Rev. Code § 2911.01(A)(3).  Count Six charged him with tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1)  *See* ECF Doc. 28-1, Page ID# 1180.

The trial court found Rackley indigent, appointed counsel, accepted Rackley's not-guilty plea and set bond at $500,000 on July 2, 2012.  ECF Doc. 28-1, Page ID# 1183.  After initial pretrial conferences were held and/or continued, Rackley appeared in open court with his counsel on August 16, 2012 and executed a limited waiver of his speedy trial rights until June 30, 2013 only.  Both Rackley and his attorney signed the waiver form, the attorney attesting he had explained the waiver and speedy trial rights to Rackley.  ECF Doc. 28-1, Page ID# 1190.  On

August 24, 2012, the trial court scheduled the case for trial on February 25, 2013.  ECF Doc. 28-1, Page ID# 1191.

Rackley moved for funding for DNA testing, and the trial court granted his motion on October 24, 2012.  Id. at Page ID# 1196.  Because further information needed to be obtained regarding the DNA testing, the trial granted Rackley's February 21, 2013 motion to continue the trial date; a new trial date was set for April 22, 2013.  Id. at Page ID# 1201.

On April 22, 2013, Rackley reached a plea agreement with the State of Ohio under which he agreed to plead guilty to an amended Count One, involuntary manslaughter, in violation of Ohio Rev. Code § 2903.04(A) and to aggravated robbery as alleged in Count Five, in violation of Ohio Rev. Code § 2911.01(A)(3).  Under the plea agreement, the parties agreed to a recommended sentencing range of 15 to 20 years of imprisonment, leaving the final determination of the length of the aggregate sentence to the discretion of the trial judge.  The parties recited the plea agreement at the plea hearing but did not reduce it to writing.  ECF Doc. 28-3, Page ID# 1903.  In exchange for Rackley's plea, the state moved to dismiss the balance of the indictment.  The trial court accepted Rackley's guilty plea to amended Count One and Count Five and dismissed the remaining charges.  The court proceeded directly to sentencing and imposed a ten year prison term on the manslaughter charge and a nine year prison term on the robbery charge.  The court ordered the prison terms to be served consecutively for an aggregate sentence of nineteen years.  Id. at Page ID# 1205-1206.

Rackley did not file a timely appeal of the conviction or the sentence.

### B.    Motion for Final Appealable Order

Rackley filed a *pro se* "Motion for a Final Appealable Order" in the trial court on January 13, 2014, eight months after his conviction.  ECF Doc. 28-1, Page ID# 1207.  The motion

3

asserted that because Rackley was not advised of his right to appeal, as required by Ohio R. Crim. P. 32(B)(2), his conviction never became final and it was, moreover, "null and void."  Id. at Page ID# 1208.  The State filed a brief in opposition.  The trial court denied the motion on January 22, 2014.  Id. at Page ID# 1216.  Rackley did not appeal this ruling.

### C.    Motion for Records

On February 20, 2014, Rackley filed a *pro se* document he entitled: "Demand Dejure Subpoenae Duces Tecum Crim. R. 16, Crim. R. 17."  The "Demand" requested copies of "All Complaints," Rackley's plea agreement, the sentencing journal entries, complete transcripts of proceedings, "The grand jury's sworn testimony" and "The order of the court."  ECF Doc. 28-1, Page ID# 1217-1218.  On February 25, 2014, the trial court denied Rackley's motion.  Rackley did not appeal this ruling.

### D.    Motion to Withdraw Guilty Plea

On March 14, 2014, Rackley, *pro se*, filed a motion to withdraw his guilty plea in which he argued: (i) he was not charged for committing the crime of aggravated murder and aggravated robbery in Cuyahoga County or the City of Shaker Heights; (ii) he was not brought before a magistrate in Shaker Heights to be turned over to Cuyahoga County, (iii) he was not given a preliminary hearing by the municipal court and never gave his consent to the waiver of his preliminary hearing in writing; (iv) he was not present at arraignment on July 2, 2012; (v) he did not waive the reading of the indictment or the 24-hour service requirement; (vi) he was not given counsel prior to the July 2, 2012 arraignment; (vii) he was denied his right to a preliminary hearing; (viii) he received incorrect legal advice; (ix) he never entered into a written plea agreement;  and (x) he was denied the effective assistance of counsel.  ECF Doc. 28-1, Page ID#

1222-1225.  The State filed a brief in opposition to the motion.  Id. at Page ID# 1231.  The trial

court denied the motion by a journal entry filed on March 27, 2014.  Id. at Page ID# 1235.

Rackley did not appeal this ruling.

### E.    Attempted Delayed Direct Appeal and Application for Reconsideration

On June 10, 2014, Rackley filed a *pro se* delayed notice of appeal in the Ohio Court of

Appeals.  ECF Doc. 28-1, Page ID# 1236.  The appeal purports to be an appeal "from the

judgement entry of conviction, entered in this court on the 5th day of June 2014."  Id.  June 5,

2014 was the date on which Rackley mailed the notice of appeal.  He attached copies of the trial

court's conviction and sentencing entry from the April 24, 2013; the trial court's January 22,

2014 entry denying his motion for a final appealable order; and the trial court's March 27, 2014

entry denying his motion to withdraw his plea.  The appellate court denied Rackley's motion for

leave to file a delayed appeal by a journal entry filed on June 27, 2014.  Id. at Page ID# 1255.

Rackley filed a *pro se* application for reconsideration under Ohio Appellate Rule 26(A)

on July 15, 2014.  Id. at Page ID# 1258.  The application, pointing to the trial court's March 27,

2014 denial of his motion to withdraw his guilty plea without opinion, challenged the fact that he

was given no reason for the denial of his motion, and contended that it was an appealable order

under Ohio Rev. Code. Ann. § 2502.02.  He also asked the court of appeals to determine whether

he had been deprived of the effective assistance of counsel.  Id. at Page ID# 1259.  Rackley's

brief argued that the "30-day deadline for filing my notice of appeal was about to expire before I

was able to receive an institution pass to the law-library, where I learned that 'a person had a

Constitutional Right to appeal even though he/she had entered a guilty plea.'"  Id.  Rackley also

asserted that because he was represented by counsel at the time of his conviction/sentencing

hearing, the trial court was obligated to notify him of his right to appeal and to appoint appellate

counsel.  Id., Page ID# 1260.

The Ohio Court of Appeals denied Rackley's application for reconsideration in an entry

filed on July 16, 2014.  Id. Page ID# 1270.

Rackley filed a *pro se* notice of appeal in the Supreme Court of Ohio on August 20, 2014.

ECF Doc. 28-1, Page ID# 1271.  Rackley's memorandum in support of jurisdiction listed seven

propositions of law:

> PROPOSITION OF LAW No. 1: Where [Appellant's] Fourteenth Amendment to
> the United States Constitution and Article I, Section 10 of the Ohio Constitution
> [rights were] violated when counsel failed to dismiss as required by law for lack
> of subject-matter jurisdiction.
>
> PROPOSITION OF LAW No.2: The trial court erred when it imposed a
> $500,000.  Bond violating [Appellant's] Eighth Amendment Right and Fourteenth
> Amendment guaranteed by the U.S. Constitution.
>
> PROPOSITION OF LAW No.3: Trial counsel failed to have a preliminary
> hearing, a motion for [an] evidentiary hearing or a suppression hearing which
> deprived [Appellant] of his Due Process Rights guaranteed by the First and
> Fourteenth Amendment to the U.S. Constitution and Ohio Constitution Art. 1,
> Section 10.
>
> PROPOSITION OF LAW No.4: Trial counsel failed to dismiss for lack of
> prosecution by the State of [Appellant's] speedy trial rights of Due Process.
>
> PROPOSITION OF LAW No.5: Appellant's Fourteenth Amendment was
> violated when the trial court denied appellant's right to an appeal.
>
> PROPOSITION OF LAW No.6: Appellant's Fourteenth Amendment was
> violated when the trial court acted contrary to law by imposing consecutive
> sentences.
>
> PROPOSITION OF LAW No.7: Appellant's Eighth Amendment and Sixth
> Amendment was violated Shaker Hts. Municipal Court did not give bail or allow
> appellant counsel when they arrested him.

In conjunction with his Supreme Court notice of appeal, Rackley also filed a *pro se* motion to

dismiss for lack of subject matter jurisdiction (ECF Doc. 28-1, Page ID# 1298), and a *pro se*

motion to suspend bail and execution of sentence. Id. at Page ID# 1319. The Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4), denied Rackley's motion to dismiss on the ground that it was moot, and denied Rackley's motion to suspend. Id., Page ID# 1327.

### F. Motion to Vacate or Set Aside Judgment of Conviction or Sentence

On July 15, 2014, Rackley filed a *pro se* motion to vacate or set aside judgment of conviction and sentence in the trial court. This initial motion for post-conviction relief included Rackley's contentions that: (i) he was denied his speedy trial rights; (ii) he was arrested for a crime as to which the police did not have sufficient evidence to charge him; (iii) he was coerced into signing a speedy trial waiver; (iv) he was denied a preliminary hearing; and his discovery was delayed. ECF Doc. 28-1, Page ID# 1328. The State filed a brief in opposition to the motion on July 18, 2014. Id., Page ID# 1335. On July 22, 2014, the trial court denied Rackley's motion. Id., Page ID# 1339.

Rackley did not appeal the trial court's ruling.

### G. Petition to Vacate or Set Aside Judgment of Conviction or Sentence

Nearly eight months later, Rackley filed his second *pro se* motion for post-conviction relief, a petition to vacate or set aside his conviction or his sentence, which also requested an evidentiary hearing. ECF Doc. 28-1, Page ID# 1340. The petition raised seven claims:

> CLAIM NUMBER ONE: The petitioner was deprived due process under the Fifth and Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was not afforded adequate notice of the charges against him.
>
> CLAIM NUMBER TWO: Petitioner's Six Amendment right to counsel in violation of the United States Constitution and Article I, Section 10 of the Ohio Constitution, under Criminal Rule 44, when Shaker Hts. Municipal Court did not afford defendant with adequate representation, the Municipal court gave

7

defendant two days served for the contempt, but never released him, and was not afforded counsel during his critical stages of his indictment.

CLAIM NUMBER THREE: Fourteenth Amendment procedural Due Process was violated when the Court of Common Pleas accepted a guilty without having sufficient evidence to support the guilty plea.

CLAIM NUMBER FOUR: The petitioner was denied the effective assistance counsel guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 10 of the Ohio Constitution.

CLAIM NUMBER FIVE: The petitioner was denied the effective assistance counsel guaranteed by the Fifth Amendment to the United States Constitution, for an improper amendment to the indictment.

CLAIM NUMBER SIX: Petitioner's Sixth Amendment Right to the United States Constitution and Article 1, Section 10 of the Ohio Constitution was violated when counsel failed to dismiss for lack of prosecution.

CLAIM NUMBER SEVEN: Counsel was ineffective for not motioning for an appeal on the petitioner's behalf, which violated his Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The trial court denied the petition on April 1, 2015 in a summary ruling which cited only the denial of Rackley's right to pursue a delayed appeal.  ECF Doc. 28-1, Page ID# 1488.

Thereafter, Rackley filed a "Motion to Leave" and a Request for Findings of Fact and Conclusions of Law with respect to the denial of his motion for post-conviction relief.  ECF Doc. 28-1, Page ID#s 1489, 1491.  The trial court ruled that it lacked jurisdiction to consider these filings because of Rackley's filing of a notice of appeal.  ECF Doc. 28-1, Page ID# 1494.

Rackley filed a *pro se* appeal of the trial court's order on April 28, 2015.  ECF Doc. 28-1, Page ID# 1496.  Rackley's merit brief asserted seven assignments of error:

ASSIGNMENT OF ERROR NO. 1: The [Appellant] was deprived due process under the Fifth and Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was not afforded adequate notice of the charges against him.

ASSIGNMENT OF ERROR NO. 2: [Appellant's] Six Amendment right to counsel in violation of the United States Constitution and Article I, Section 10 of

the Ohio Constitution, under Criminal Rule 44, when Shaker Hts. Municipal
Court did not afford defendant with adequate representation, the Municipal court
gave defendant two days served for the contempt, but never released him, and was
not afforded counsel during his critical stages of his indictment.

ASSIGNMENT OF ERROR NO. 3: Fourteenth Amendment procedural Due
Process was violated when the Court of Common Pleas accepted a guilty without
having sufficient evidence to support the guilty plea.

ASSIGNMENT OF ERROR NO. 4: The appellant was denied the effective
assistance counsel guaranteed by the Sixth and Fourteenth Amendment's to the
United States Constitution and article 1, section 10 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. 5: The petitioner was denied the effective
assistance counsel guaranteed by the Fifth Amendment to the United States
Constitution, for an improper amendment to the indictment.

ASSIGNMENT OF ERROR NO. 6: The right to a speedy trial is guaranteed by
the Sixth Amendment to the United States Constitution, counsel was ineffective
and showed prejudice for not dismissing for speedy trial violation an coerced
waiver of Constitutional right.

ASSIGNMENT OF ERROR NO. 7: Counsel was ineffective for not motioning
for an appeal on the [appellant's] behalf, which violated his Procedural Due
Process Clause of the Fourteenth Amendment to the United States Constitution.

The court of appeals affirmed the trial court's ruling on Rackley's motion to vacate in a

journal entry filed on October 29, 2015.  ECF Doc. 28-2, Page ID# 1580-1589.  First, the court

noted that Rackley's petition was a second or successive petition for post-conviction relief under

Ohio Rev. Code. Ann. §§ 2953.21 et seq.  The court found that Rackley had not satisfied the

requirements of Ohio Rev. Code Ann. § 2953.23(A)(1), which limits the circumstances under

which an untimely or a second or successive petition for post-conviction relief may be

considered.  Only when a petitioner was unavoidably prevented from discovering the facts upon

which the petition was predicated or when the United States Supreme Court has recognized a

new federal or state right that applies retrospectively to a petitioner's claim may the court

consider the merits of a second or successive petition.  The court found that Rackley had filed his

petition well beyond the 180 day statutory time limit and satisfied neither of the jurisdictional prerequisites.  The court also ruled that his plea of guilty meant that he could never show that but for the alleged constitutional error no reasonable finder of fact would have found him guilty. The court affirmed the trial court's judgment on the petition to vacate.

Rackley did not appeal this judgment to the Ohio Supreme Court.

### H.      State Habeas Petition

While Rackley's appeal of the trial court's ruling on the petition to vacate his conviction and sentence was pending, he filed a *pro se* Application for Writ of Habeas Corpus in the Ohio Eleventh District Court of Appeals on March 27, 2015.  ECF Doc. 28-2, Page ID# 1590. Rackley alleged that he did not understand the nature of the charges; asserted an arrest warrant was not issued; and he challenged the propriety of the transfer of the case from the municipal court to the common pleas court without the municipal judge ever having made a probable cause determination (this provided his basis for challenging the subject matter jurisdiction of the trial court).  He raised issues with the criminal complaint; he alleged he was denied counsel during critical stages of indictment; asserted the Municipal Court failed to comply with the rules of criminal procedure; asserted there was an improper amendment of the indictment (when the charges were reduced from aggravated murder and others to involuntary manslaughter at the time he pleaded guilty); contended his guilty plea was involuntary; alleged the evidence was insufficient to sustain his conviction; argued his factual guilt was not established; contended a written plea agreement was never executed; argued his counsel did not move for acquittal or to suppress evidence (Rackley challenged the constitutionality of the state's taking of a DNA sample, an issue he argues his trial counsel should have raised in a motion to suppress); he contended his speedy trial rights were violated; and asserted his trial counsel failed to properly

10

investigate the case or to file an appeal of his conviction.    Rackley sought immediate release

from custody.  Id., Page ID# 1606.  The warden moved to dismiss the petition, arguing that

habeas corpus relief was not available to Rackley given the other legal remedies he could have or

did take advantage of such as direct appeal and post-conviction relief.  The warden also argued

that none of Rackley's grounds for relief were cognizable in a habeas proceeding.  ECF Doc. 28-

2, Page ID# 1725.  Rackley filed a "Reply Traverse to Respondent's Motion to Dismiss."  ECF

Doc. 28-3, Page ID# 1742.  In it, he restated his arguments and replied to the warden's

arguments.  Next, Rackley moved to dismiss the warden's motion to dismiss and requested

summary judgment in his favor.  ECF Doc. 28-3, Page ID# 1762.  On July 27, 2015, the appeals

court dismissed Rackley's habeas petition, holding that Rackley's claims were not cognizable in

a state habeas proceeding and further ruling that res judicata principles barred him from

relitigating issues he had already raised unsuccessfully.  The court also dismissed Rackley's

pending motions.  ECF Doc. 28-3, Page ID# 1773.

Rackley filed a notice of appeal in the Ohio Supreme Court on August 17, 2015.  ECF

Doc. 28-3, Page ID# 1778.  Rackley's merit brief asserted seven propositions of law and seven

identical issues for review:

PROPOSITION OF LAW NO.1: The trial court Lacked Subject-matter
jurisdiction to accept petitioner's guilty plea in the case of State v. Rackley that
stemmed from neither court invoking their jurisdiction pursuant to Crim. R. 3
thereby violating his equal protection and Fourth, Fifth and Fourteenth
Amendment to the United States Constitution and Article I, Section 15,16 of the
Ohio Constitution.

PROPOSITION OF LAW NO.2: Petitioner's Six Amendment right to counsel in
violation of the United States Constitution and Article I, Section 10 of the Ohio
Constitution, under Criminal Rule 44, when Shaker Hts. Municipal Court did not
afford defendant with adequate representation, the Municipal court gave
defendant two days served for the contempt, but never released him, and was not
afforded counsel during his critical stages of his indictment.

11

PROPOSITION OF LAW NO.3: Fourteenth Amendment procedural Due Process was violated when the Court of Common Pleas accepted a guilty plea not knowingly and voluntarily without having sufficient evidence to support the plea.

PROPOSITION OF LAW NO.4: The petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendment's to the United States Constitution and article 1, section 10 of the Ohio Constitution.

PROPOSITION OF LAW NO.5: Petitioner was denied his Due Process Rights and Fifth Amendment right under United States v Rosa—Ortiz 348 F.3d 33; 2003 US. App. LEXIS 21988 No. 02—2362 (2003) when he was deprived the right to argue that he has been imprison for conduct [alleged in the indictment] in violation of Fed. Rule 12(b)3(b).

PROPOSITION OF LAW NO.6: The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution, counsel was ineffective and showed prejudice for not dismissing for speedy trial violation an coerced waiver of Constitutional right.

PROPOSITION OF LAW NO.7: Counsel was ineffective for not motioning for an appeal on the [appellant's] behalf, which violated his Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Id., Page ID# 1781-1829.  Warden Sloan filed a merits brief.  Id., Page ID# 1830.  Rackley filed

a motion for an evidentiary hearing and a motion to suspend bail and the execution of his

sentence.  EFC Doc. 28-3, Page ID# 1846, 1851 and 1863.  On June 16, 2016, the Ohio Supreme

Court unanimously affirmed the judgment of the court of appeals and denied Rackley's motions

as moot in light of the Court's ruling.  ECF Doc. 28-3, Page ID# 1874.  The Court concluded that

Rackley's claims were not cognizable in a state habeas proceeding, and it concluded that he had

alternative remedies at law to assert his claims.  Id., Page ID# 1876, ¶ 5.  The court found that all

of Rackley's pre-conviction allegations of municipal and common pleas court failures were

procedural, not jurisdictional; and after conviction, the judgment "binds the defendant for the

crime for which he was convicted."  Id. at ¶ 6.  The Court specifically found the trial court had

jurisdiction over Rackley's case, Id. at ¶ 7.

## I.     Federal Habeas Corpus Petition

Rackley filed his *pro se* petition for writ of habeas corpus in this Court on July 19, 2016.[2]

ECF Doc. 1.  Rackley's petition raises seven grounds for relief:

> GROUND ONE: The trial court lacked subject matter jurisdiction to accept
> Petitioner's guilty plea in the case of State v. Rackley that stemmed from neither
> court invoking their jurisdiction pursuant to Crim. R. 3.  Thereby violating his
> equal protection and Fourth, Fifth, and Fourteenth Amendment to the United
> States Const. and Article I, Section 15, 16 of the Ohio Const. Shaker Hts. Police
> Department did not charge Petitioner with a crime.  There is no affidavit charging
> an offense and no warrant issue.  Petitioner was transported to the county jail
> without legal authority.  Information was sent to Bill Mason and not by complaint
> or affidavit who in return was not the prosecutor.  Timothy J. McGinty who was
> the Cuyahoga County prosecutor.  This case was never presented to Mr. McGinty.
> Therefore the indictment was never presented to the grand jury or a magistrate of
> the Common Pleas Court of Cuyahoga County. Probable cause was never
> established in any form by way of Municipal Court of Shaker Hts. or Cuyahoga
> County.
>
> GROUND TWO: Petitioner's Sixth Amendment right to counsel in violation of
> the United States Constitution and Art. I Section 10 of the Ohio Constitution,
> under Criminal Rule 44, when Shaker Hts. Municipal Court gave defendant two
> days [served] for the contempt, but never released him, and was not afforded
> counsel during his critical stages of his indictment under no authority or right
> Shaker Hts. transported Petitioner to the county jail without giving him counsel
> once again not charging him with a crime having probable cause to detain him.
>
> GROUND THREE: Fourteenth Amendment Procedural Due Process was
> violated when the Court of Common Pleas accepted a guilty plea was not
> knowingly and voluntarily, intelligently, without having sufficient evidence to
> support the plea.  Counsel coerced Petitioner to plead guilty when he wanted to go
> to trial, counsel induced fear of a life sentence, petitioner was under duress from
> being in the county jail for ten months.  Petitioner has filed evidence and
> affidavits.
>
> GROUND FOUR: The Petitioner was denied the effective assistance of counsel
> guaranteed by the Sixth and Fourteenth Amendment to the United States
> Constitution and Article I, Section 10 of the Ohio Constitution.  Counsel never
> investigated the case he didn't bring up Petitioner's alibi from the phone records.
> He never file for an evidentiary hearing or a suppression, he coerced Petitioner to
> waive his right to speedy trial and coerced by fear of a lengthy sentence for a
> guilty plea.  Never questioned the defective indictment.

---

[2] The filing date is determined by applying the prison mailbox rule, as argued by Warden Sloan.  *Houston
v. Lack*, 487 U.S. 266, 270 (1988).

GROUND FIVE: Petitioner was denied his Due Process rights and Fifth Amendment right under the United States v. Rosa-Ortiz, 348 F.3d 33, 2003 U.S. App. LEXIS 21988 No. 02-2362 (2003) when he was deprived the right to argue that he has been imprison for conduct [alleged in the indictment] in violation of Fed. Rule 12(b)(3)(b).

GROUND SIX: The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution, counsel was ineffective and showed prejudice for not dismissing for a speedy trial violation an coerced waiver of his Constitutional right.

GROUND SEVEN: Counsel was ineffective for not motioning for an appeal on the Petitioner's behalf, which violated his Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Id., Page ID# 5, 24.  On September 5, 2017, after initially moving to dismiss,[3] Warden Sloan filed a return of writ.  ECF Doc. 28.  On October 6, 2017 Rackley filed a traverse (erroneously entitling it a traverse to the warden's motion to dismiss).  ECF Doc. 29.

## III.    General Standards of AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Rackley's petition for writ of habeas corpus.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences…and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2244.  Because Warden Sloan makes a statute of limitations argument for

---

[3] The undersigned issued an order finding that Warden Sloan's motion to dismiss did not address all seven of Rackley's grounds for relief and observing that no brief had been filed on the merits of the petition.  The warden exercised his right to file an objection to that order and requested an extension to file an answer and/or return of writ.  The motion for extension was denied and a response date was set.  Warden Sloan filed his return of writ within the deadline set by the undersigned.

dismissal of Rackley's entire petition, I have made a detailed review of the applicable law pertaining to the statute of limitations and its application to this case in Section VI(A) below.

AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Id. One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as

opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). As noted above, a habeas petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be."  *Id*. at 102.

## IV.   Analysis and Findings

### A.   Statute of Limitations

Warden Sloan argues initially that the AEDPA statute of limitations bars all of Rackley's grounds for relief.  Under 28 U.S.C. § 2244(d)(1), a state prisoner must file a habeas corpus petition within one year from the latest of four circumstances:

> (A) the date on which the [state-court] judgment became final by the conclusion of direct  review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, the court's first task is to decide the statute of limitations commencement date.

Warden Sloan contends that § 2244(d)(1)(A) applies and that Rackley's limitations period began to run thirty days after the April 24, 2013 filing of his judgment of conviction, or May 24, 2013.  ECF Doc. 28, Page ID# 1131.  Rackley agrees that is when the "standard" limitations period would begin to run.  ECF Doc. 29, Page ID# 1947.  It is obvious that Rackley filed his July 2016 habeas petition more than a year plus thirty days after the entry of judgment on April 24, 2013.  In order to determine whether the case is time-barred, as urged by Warden Sloan, the court must determine whether statutory or equitable tolling stopped the statute of limitations from expiring before Rackley filed his federal habeas petition.

### 1.    Statutory Tolling Under AEDPA

AEDPA statutorily tolls – or stops the running of – the limitations period under specific circumstances.  Under 28 U.S.C. § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral relief is pending is not counted against the one-year limitations period.  To qualify for tolling, however, such state court filings must be both "pending" and "properly filed."  Id.  Untimely state court motions are not "properly filed" and do not stop the one-year clock.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  This is so even when there are exceptions to a state timely-filing requirement, such as the "good cause" exception in Ohio Appellate Rule 26(B).  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005).  Thus, "[w]hen a

post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  Importantly, AEDPA statutory tolling "does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period has expired, collateral-relief petitions in state court no longer serve to avoid a statute of limitations." *Winkfield v. Bagley*, 66 Fed. App'x. 578, 581 (6th Cir. 2003).

Here, Rackley filed numerous petitions and motions in state court.  Some of them tolled the running of the statute of limitations.  First, he filed a motion for a final appealable order on January 13, 2014.  ECF Doc. 28-1, Page ID# 1207.  This was on the 234th day after his conviction became final; thus, 233 days of Rackley's one-year AEDPA limitations period had already elapsed by the time he filed it.  If the court treats that motion as a properly filed motion for post-conviction or collateral review – as the Warden's brief concedes – its filing tolled the statute of limitations until the trial court denied the motion on January 22, 2014.  As a result, the limitations period began to run again on January 23, 2014.

On February 20, 2014, Rackley filed his motion for court records and documents (he entitled it, "Demand De Jure Subpoenae Duces Tecum") ECF Doc. 28-1, Page ID# 1217. Between January 23 and February 19, an additional twenty-eight days elapsed from his one year limitations period.  Thus, by the time he filed, 261 days had elapsed.  The trial court denied the motion for documents on February 25, 2014, and the limitations period began to run again the next day, on February 26, 2014.

Rackley next filed a motion to withdraw his guilty plea on March 14, 2014.  ECF Doc. 28-1, Page ID# 1222.  Between February 26 and March 13, 2014 an additional sixteen days elapsed from Rackley's one-year limitations period; thus, by the time Rackley moved to

withdraw his plea, 277 days of his limitations period had elapsed.  The trial court denied the motion to withdraw on March 27, 2014, and the limitations period began to run again the next day, on March 28, 2014.

Rackley made his first filing in the state court of appeals when he filed a notice of appeal on June 10, 2014.[4]  ECF Doc. 28-1, Page ID# 1236.  Between March 28 and June 9, 2014 an additional seventy-four days elapsed from Rackley's one-year limitations period; thus, by the time Rackley attempted to pursue a delayed direct appeal, 351 days of his § 2244(d)(1)(A) limitations period had expired.  The Ohio Court of Appeals denied Rackley the right to pursue a delayed appeal on June 27, 2014; and it denied his motion for reconsideration on July 15, 2015.  Rackley filed a notice of appeal in the Ohio Supreme Court on August 20, 2014.  ECF Doc. 28-1, Page ID# 1271.  The Supreme Court declined to exercise jurisdiction over the matter on February 18, 2015.  ECF Doc. 28-1, Page ID# 1327.  Rackley's AEDPA statute of limitations began to run again the next day, on February 19, 2015.[5]

Because 351 days of Rackley's one year limitations period under § 2244(d)(1)(A) had expired before he sought delayed appeal, he had only fourteen days remaining when the limitations period began to run again on February 19, 2015.  Fourteen days later it expired, on March 4, 2015.

_____

[4] The form Rackley filed indicated his appeal was being filed pursuant to Ohio App. Rule 4(B), but the court of appeals treated it as an application for delayed appeal.  Indeed, Rackley was not seeking delayed appeal based on one of the Rule 4(B) exceptions to the Rule 4(A) time limit to file a notice of appeal.  The court of appeals characterization of the filing is was consistent with the substance of Rackley's filing.
[5] During the time Rackley's attempted delayed appeal was pending, on July 15, 2014, he filed his motion to vacate or set aside his judgment of conviction or sentence.  ECF Doc. 28-1, Page ID# 1328.  The trial court denied that motion on July 22, 2014.  Rackley's AEDPA statute of limitations was already being tolled during the July 15 – July 22 period because of his attempt to obtain the right to file a delayed appeal, thus, this motion to vacate does not figure in the AEDPA statute of limitations analysis.

No tolling of the limitations period arises from Rackley's later filings because once the statute of limitations has run, there is nothing more to toll; and, as discussed above, the limitations period is not revived by a petitioner's later state court filings.  Thus, Rackley's application for a state writ of habeas corpus pursuant to Ohio Rev. Code Ann. § 2725.04, ECF Doc. 28-1, Page ID# 1340, the associated appeal to the Ohio Supreme Court, ECF Doc. 28-3, Page ID# 1778, and the time needed for the Supreme Court to rule on June 16, 2016, ECF Doc. 28-3, Page ID# 1874, do not affect the statute of limitations analysis.  Similarly, his March 2015 filing of post-conviction relief petition to vacate his conviction and sentence also did not affect his statute of limitations expiration.

Rackley filed his federal habeas petition on July 19, 2016, over sixteen months after the § 2244(d)(1)(A) limitations period expired.  Unless a different AEDPA statute of limitations or equitable tolling applies, Rackley's federal petition is time-barred.

### 2.      Later Statute of Limitations Start Date

Recognizing the statute of limitations problem, Rackley argues for a later commencement of his AEDPA statute of limitations under 28 U.S.C. § 2244(d)(1)(D) ("The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.")  The state argues against this contention.  Both Warden Sloan and Rackley agree that Rackley bears the burden to establish applicability of § 2244(d)(1)(D).  Thus, Rackley must show that he discovered a new factual predicate for his habeas claims later than the § 2244(d)(1)(A) statute commencement date; and he must show he was diligent in his efforts to do so.  *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. §

2244(d)(1)(D).").  Section 2244(d)(1)(D) becomes relevant when a habeas petitioner argues that

he bases his habeas claims upon newly discovered evidence.  *McQuiggin v. Perkins*, 569 U.S.

383, 389, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013)("If the petition alleges newly discovered

evidence, however, the filing deadline is one year from the date on which the factual predicate of

the claim or claims presented could have been discovered through the exercise of due

diligence.")

Although Rackley asserts his entitlement to a later AEDPA statute of limitations

commencement date under § 2244(d)(1)(D), his traverse never indicates what he believes the

later start date should be.  Further, Rackley's traverse never specifically identifies the newly

discovered evidence upon which he bases his claims or when he discovered such evidence.

Instead, he cites a series of cases that deal with unrelated topics.  ECF Doc. 29, Page ID# 1948-

1949.  Courts are not obligated to consider unsupported arguments in a party's brief.  *Lewless v.*

*Secretary of Health and Human Servs*, 25 F.3d 1049 (6th Cir. 1994); *United States v. Clark*, No.

90-1575, 1991 U.S.App. LEXIS 6681 (6th Cir. April 4, 1991); *Cashner v. U.S. Steel Corp.*, 327

F.2d 533 (6th Cir. 1964).  Nevertheless, because of Rackley's status as a *pro se* petitioner, the

court will examine his filings further.

The following paraphrase of Rackley's grounds for relief illustrates that none of his

claims for relief is based upon newly discovered evidence:

> GROUND ONE challenges the legal propriety of Rackley's initial 2012 arrest on
> an unrelated contempt of court citation from a traffic case and how his case then
> proceeded from his Shaker Heights arrest to a grand jury indictment.  He asserts
> he was not brought before a state court magistrate within 48 hours of his arrest on
> the contempt citation and never had a probable cause determination or a
> preliminary hearing in the municipal court in regard to the murder, robbery and
> kidnapping charges on which he was later indicted.  He contends the common
> pleas court never gained subject matter jurisdiction over his case absent these
> municipal court proceedings.  Rackley's petition argues that absent subject matter

jurisdiction, his conviction is void. *Rackley knew all these facts before he pleaded guilty.*

GROUND TWO challenges (i) the basis for Rackley being kept in custody after serving two days' jail time on the contempt citation (while the murder case was being presented to the grand jury); and (ii) why he was not appointed counsel in the days before his initial appearance in common pleas court on the indicted charges. *Rackley knew all these facts before he pleaded guilty.*

GROUND THREE challenges the sufficiency of the evidence to support a finding of guilt on the charges to which Rackley pleaded guilty. This ground also asserts that Rackley pleaded guilty to manslaughter because his lawyer made him fear a life sentence if found guilty of murder; he also contends he felt pressure to plead guilty as a result of having been held in custody for ten months. *Rackley knew all these facts before he pleaded guilty.*

GROUND FOUR asserts that Rackley's trial counsel was ineffective for not investigating his case and his alibis; for not filing motions to suppress evidence; for coercing him to waive his right to a speedy trial and coercing him to plead guilty out of fear for a life sentence; and for not challenging a defective indictment. *Rackley knew all these facts before he pleaded guilty, and at the time of his guilty plea, Rackley expressed satisfaction with his lawyers' performance.*

GROUND FIVE argues that Rackley was denied due process when prevented from asserting his indictment was defective under Fed.R.Crim.P. 12(b)(3)(b). *Rackley knew he had not challenged his indictment before he pleaded guilty; and he knew the state moved to amend the aggravated murder charge to the lesser charge of manslaughter at his plea hearing.*

GROUND SIX argues that Rackley's constitutional right to a speedy trial was violated and that he was coerced to waive his speedy trial rights. *Rackley knew he had agreed to waive his speedy trial rights before he pleaded guilty.*

GROUND SEVEN argues that Rackley's trial counsel was ineffective for not initiating a timely direct appeal.[6] *This too is not a claim predicated on newly discovered evidence.*

It is readily apparent that Rackley knew all of these facts – other than the fact that his trial counsel didn't file an appeal of his conviction – by the time he pleaded guilty and the trial court sentenced him.

---

[6] He contends he didn't know he had a right to appeal because the trial court never told him of that right at the time he was sentenced, but he surely knew he had not filed an appeal.

23

Even if the court supposes that Rackley is arguing that his discovery of a right to appeal after a guilty plea or his discovery of the fact that no appeal had been commenced for him could be construed as newly discovered evidence upon which his claims are predicated, Rackley has not shown that he could not have discovered such "facts" through his exercise of due diligence. Rackley's traverse barely addresses the topic of when he learned of his appeal rights or what he did – in the exercise of due diligence – to learn of them earlier.  Instead, he merely asserts: "When Rackley filed his [motion for] final appealable order on Jan. 13, 2014 he was told by another inmate that he could file an appeal, he was not given the rule of appellate procedures so with that said he did not understand that he had thirty days to appeal any motion filed in the state [courts]."  ECF Doc. 29, Page ID# 1948.  This statement does not indicate exactly when Rackley had the conversation with the other inmate.  And Rackley doesn't specify what appeal period he is referring to; in other words, whether it was the original right to appeal his judgment of conviction or the right to appeal the denial of his motion for a final appealable order (or some other post-conviction ruling).

The state court record sheds no more light on exactly when Rackley learned he could appeal his conviction and sentence.  But the content of Rackley's January 13, 2014 motion for a final appealable order (ECF Doc. 28-1, Page ID# 1208) reveals Rackley had discovered his appellate rights by then, because he discussed those rights and his views on the validity of his judgment of conviction in that motion.  However, that document did not indicate the date on which Rackley gained such knowledge.  Six months later, in July 2014 when Rackley filed an application for reconsideration of the Ohio Court of Appeals' denial of his motion for leave to pursue a delayed appeal, Rackley stated:

> The 30-day deadline for filing my "notice of appeal" was about to expire before I
> was able to receive an institution pass to the law-library, where I learned that

24

> "person had a <u>Constitutional Right</u> to an appeal even though he/she had entered a guilty plea."  I also learned therein that because I had been represented by court-appointed counsel; the trial court, after accepting my plea and pronouncing sentence, was obligated by the law to (1) inform me of my Constitutional Right to appeal [and] (2) Appoint Appellate Counsel to file my "notice of Appeal" Yet this did not occur.

ECF Doc. 28-1 Page ID# 1259-1260.  Rackley also sent a letter to the court of appeals accompanying his reconsideration motion.  ECF Doc. 28-1, Page ID# 1268-1269.  The letter repeated the above-quoted statement and asserted, among other things, that Rackley's counsel (presumably his trial counsel) was ineffective because he didn't file a notice of appeal on Rackley's behalf.  Id.  The court cannot glean from these filings what appeal deadline Rackley was referring to in stating "30-day deadline for filing my 'notice of appeal' was about to expire." If it was the original thirty day period after the filing of his judgment of conviction, and Rackley discovered his right to appeal shortly before May 2013, then Rackley has not shown his entitlement to a later statute of limitations start date.  However, even if Rackley was asserting he learned of his right to appeal just before the expiration of the appeal period(s) for the denial of his March 2014 motion to withdraw his plea; or the denial of his February 2014 motion for documents; or the denial of his January 2014 motion for a final appealable order, Rackley still has not revealed the date on which he specifically learned he had a right to appeal his judgment of conviction.  And his traverse is completely silent on what he did for the 233 days between the filing of his judgment of conviction and when he moved for a final appealable order.  Rackley has not developed the record on when he actually discovered his right to appeal – the alleged factual predicate for a new habeas claim that would trigger a later statute of limitations start date.

The uncertainty of the record does not prevent this court from reaching a conclusion on the applicability of § 2244(d)(1)(D), however.  The issue presented in an argument for the applicability of a later statute of limitations start date under § 2242(d)(1)(D), is when the habeas

petitioner *could have* discovered his 'newly discovered evidence' had he been diligent.  Here, there can't be any dispute that Rackley *could have* discovered his appeal rights through the exercise of due diligence, because he *did* discover them simply by going to the prison law library and/or discussing his rights with a fellow inmate.  Although Rackley states, "[t]he 30-day deadline for filing my "notice of appeal" was about to expire before I was able to receive an institution pass to the law-library," he does not state when he first tried to get such a pass.  He does not assert that he had been denied the right to a library pass despite requesting one.  And he does not say exactly when he finally got the pass.

Claims that relate to events that occurred at the time of sentencing may be timely under 28 U.S.C. § 2244(d)(1)(D) if the petitioner acted in a reasonably diligent manner in learning about his right to appeal:

> The proper task in a case ... is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal].  After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.
>
> * * * *
>
> [T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing].
>
> *Wims [v. United States*,] 225 F.3d [186,] 190–91 [(2d Cir. 2000) ] (citing *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (taking into account "the realities of the prison system" in determining due diligence)).

*DiCenzi*, 452 F.3d at 470–471.  "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)."  Id. at 471 (citing *Lott v.*

26

*Coyle*, 261 F.3d 594, 605–06 (6th Cir. 2001)). This court also construes *DiCenzi v. Rose*, in conjunction with *Johnson v. United States*, 544 U.S. 295 (2005), which requires consideration of the petitioner's exercise of diligence. Thus, a petition cannot be deemed timely when the petitioner fails to act with reasonable diligence. "Applying *DiCenzi* and *Johnson*, Petitioner must demonstrate either that he exercised due diligence in discovering the lack of notice of his right to appeal, the fact on which his conviction-based claims are predicated, or that he filed for habeas within one-year from the time a person exercising due diligence in Petitioner's position would have discovered that fact." *McIntosh v. Hudson*, 632 F. Supp. 2d 725, 734 (N.D. Ohio July 10, 2009) ("A person in Petitioner's position exercising due diligence would have acted much sooner, seeking out his rights and remedies rather than waiting [more than two and one half years after his conviction] for a law clerk ... to '[notice] that [he] was never informed of his right to appeal[.]'") *See also Yavari v. Wolfe*, No. 2:07-cv-480, 2008 WL 2078061, at *7 (S.D. Ohio May 13, 2008) (Petitioner failed to establish that he acted diligently in learning about his right to appeal by waiting two years to file motion for a delayed appeal). Moreover, lack of actual notice and "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse [late] filing." *Fisher v. Johnson*, 174 F.3d 710, 714–15 (5th Cir. 1999). *See also United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999); *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).

Rackley's failure to explain how he diligently investigated his rights during the 233 days between his conviction and his January 2014 motion for a final appealable order is fatal to his argument for a later statute of limitations start date. Any theoretical life in his argument is certainly extinguished by his unexplained delay between January 13, 2014 (when he certainly knew of his right to appeal) and June 10, 2014 in attempting his delayed appeal. The petitioner

bears the burden of proving that he exercised due diligence for the purpose of triggering § 2244(d)(1)(D)'s applicability.  Rackley has not met his burden in this case.  He has not shown that the factual predicate for his claims could not have been discovered through the exercise of his own diligence until a date later than the statute of limitations commencement date in § 2244(d)(1)(A), thirty days after his judgment of conviction was filed.  And, as discussed above, Rackley knew virtually all of the factual bases his habeas claims by the time of his conviction and sentence in April 2013.

On the record before the court, Rackley is not entitled to a later statute of limitations commencement date under 28 U.S.C. § 2244(d)(1)(D).  Unless equitable tolling applies, Rackley's petition is time-barred under AEDPA.

### 3.        Equitable Tolling

AEDPA's statute of limitations can be tolled on equitable grounds in certain circumstances.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "Equitable tolling allows courts to review time-barred habeas petitions provided that a litigant's failure to meet the legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012)(internal quotation marks omitted).  A habeas petitioner bears the burden of demonstrating he is entitled to equitable tolling.  *See, e.g., McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).  To do so, the petitioner must show that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649; *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745 (6th Cir. 2011).  If the court finds either of those requirements lacking, it cannot apply equitable tolling to save an otherwise time-barred habeas claim.

As discussed in the prior section, Rackley has not demonstrated he was diligent in discovering or pursuing his rights prior to the January 13, 2014 filing of his motion for a final appealable order.  But he has argued that his many filings thereafter demonstrate he began to exercise diligence once he filed that motion.  The Sixth Circuit has ruled, "in order for equitable tolling to apply, the petitioner must diligently pursue *habeas* relief."  Winkfield v. Bagley, 66 Fed. App'x 578 (6th Cir. 2003)(emphasis added)(citing *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

The problem for Rackley is that his petition and traverse are utterly silent on why he waited until July 2016 to file a federal habeas petition.  Although he began acting diligently in pursuing his rights in state court in January 2014, he waited two and a half years thereafter before he filed his federal habeas petition.  The issue in this analysis is not whether some cause and prejudice may have excused a procedural default of state court claims.  Instead, the court must examine whether Rackley has identified something that kept him from being able to file his federal habeas petition on time.  He has not done so.  Indeed, apart from citing the Sixth Circuit case of *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006) and two other cases, Rackley has not offered any facts or argument to justify the application of equitable tolling.  Instead, he contends the filing of his state court motion to pursue a delayed appeal justifies his request for equitable tolling.  As noted above, however, the filing of Rackley's App. R. 5(A) notice of appeal *statutorily* tolled the running of the statute of limitations.  So, Rackley benefitted from the full tolling potential of his request for delayed appeal.  No further tolling arises from the filing of that motion.

29

Rackley has not identified any extraordinary circumstance that stood in his way and prevented the timely filing of his federal habeas petition.  And Rackley does not explain why he waited fourteen months after his AEDPA statute of limitations expired before he filed for federal habeas relief.  Absent evidence that Rackley was diligent in pursuing his federal habeas rights and absent any evidence that something extraordinary prevented his timely filing of his federal petition, the court has no choice but to conclude that this is not a case in which equitable tolling may be applied to provide an avenue around the running of the AEDPA statute of limitations.

### 4.     Actual Innocence

A sufficient claim of actual innocence can overcome a statute of limitations bar in a habeas case in order to prevent a fundamental miscarriage of justice.  *McQuiggin v. Perkins*, 569 U. S. 383 (2013).  The Supreme Court noted, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court  that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  Id. at 386 (citing *Schlup v Delo*, 513 U.S. 298, 329 (1995)).  This fundamental miscarriage of justice "standard is 'demanding' and seldom met."  Id. And the standard "applies to a severely confined category: cases in which *new evidence* shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  Id. at 395 (emphasis added; citing *Schlup*).  The Court concluded by noting:  "We stress once again that the *Schlup* standard is demanding.  The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Id. at 401.

Rackley's traverse asserts his actual innocence.  "[T]he evidence in this case that has been submitted will prove that Rackley did not commit this crime."  ECF Doc. 29, Page ID# 1984.  "[Defense counsel] coerced petitioner to [plead guilty to] involuntary manslaughter when the state had no evidence against him."  Id. at Page ID# 1989.  "In the instant case, the claim of actual innocence is presented along with allegations of underlying constitutional violations."  Id. at Page ID# 1994.  But Rackley has offered no new evidence that would establish his actual innocence or undermine his guilt.  Also, Rackley doesn't address the admission of guilt arising from his guilty plea.  Instead, he offers only multiple case citations and innuendo.  For example, he discusses his counsel's non-presentation of Rackley's phone records and records of "phone tower hits to show his whereabouts when the neighbors said they heard the disturbance in the street."  Id. at Page ID# 1992.  And, without pointing to any alibi evidence – new or old – Rackley cites a case which holds that ineffective assistance of counsel claims can arise when counsel "fails to investigate and raise a viable 'Alibi' defense, and presentation of the defense would, with reasonable probability, have resulted in a different outcome."  Id. at Page ID# 1994.

The record before the court provides no support for a viable actual innocence claim by Rackley.  He has produced no new evidence.  And he has offered no evidence or argument to support the threshold requirement that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.  Rackley is not entitled to the *McQuiggin* exception to the statute of limitations.

### 5.    Statute of Limitations Conclusion

Because Rackley filed his habeas petition more than one year after his conviction became final, even after all statutory tolling periods are added to the time allowed, each of the grounds for relief he asserts in his petition is time-barred.  Moreover, Rackley is not entitled to a later

statute of limitations commencement date, because he has not shown that he could not have discovered the factual predicate for his habeas claims by the exercise of due diligence. Rackley has not demonstrated an entitlement to equitable tolling, and he has not offered any newly discovered evidence of his actual innocence in order to qualify for an equitable exception to the statute of limitations under *McQuiggin*. I recommend that the court dismiss the petition on that basis.

### B.     Respondent's Other Grounds for Denial of the Writ

Notwithstanding the conclusion that this petition is entirely barred by the statute of limitations, the undersigned notes that Warden Sloan has argued various other grounds on which the petition must be denied. In the interest of completeness, the undersigned will address the warden's arguments concerning procedural default and cognizability and Rackley's arguments in opposition.

### 1.     Procedural Default

In order for a state prisoner to seek habeas relief, he must have fairly presented and exhausted his federal claims at all levels in the state court system and have given the state courts a full and fair opportunity to act on those claims before he presents them in a federal § 2254 petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). The exhaustion requirement affords state courts an opportunity to address and, if necessary, correct any federal constitutional violations that may have occurred in the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the

federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). If the petitioner fails to present the claims in state court at all and has lost the opportunity to do so, or if he fails to present them in compliance with the procedural requirements of the state courts, he has procedurally defaulted them.

A peculiar type of procedural default arises where there has been no "fair presentation" of the ground to the state's highest court. The substance of the federal claims submitted for habeas corpus review must be "fairly presented" to the state's highest court because only in this manner will the state courts have been provided with a full and fair opportunity to pass upon and correct alleged violations of federal rights. *See Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865, 868 (1995); *Baldwin v. Reese,* 541 U.S. 27, 32-34, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

Warden Sloan argues that Rackley procedurally defaulted all of the claims asserted in his Ground One through Ground Six claims and offers multiple contentions in support. Primarily, the warden points to Rackley's failure to pursue a direct appeal of his 2013 conviction and sentence within the time limit of Ohio Appellate Rule 4(A). Rackley's failure to pursue a direct appeal and his failure to obtain leave to file a delayed direct appeal under Ohio Appellate Rule 5(A) requires this court to make several conclusions: First, Rackley can no longer present in Ohio courts the federal claims he could have asserted on direct appeal; as such, he is deemed to have "exhausted" his state remedies with respect to such claims because the opportunity for direct appeal is no longer available to him. *Engle v. Isaac*, 456 U.S. 107, 125 (1982). Second, because Rackley did not succeed in presenting his federal claims to the Ohio Supreme Court via

33

direct appeal – originally or on a delayed basis – he has not fairly presented those claims to the

state's highest court.  As a result, the claims have been procedurally defaulted unless Rackley

can demonstrate cause for his failure to pursue his appellate rights and prejudice resulting from

the enforcement of the state appellate rules.  In *Woodford v. Ngo*, 548 U.S. 81, 93, 122 S.Ct.

2378, 2387, 165 L.Ed.2d 368 (2006), the Supreme Court explained the interplay between the

exhaustion and procedural default rules:

> In habeas, the sanction for failing to exhaust properly (preclusion of review in
> federal court) is given the separate name of procedural default, although the
> habeas doctrines of exhaustion and procedural default "are similar in purpose and
> design and implicate similar concerns," *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 7,
> 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).  See also *Coleman v. Thompson*, 501
> U.S. 722, 731–732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  In habeas, state-
> court remedies are described as having been "exhausted" when they are no longer
> available, regardless of the reason for their unavailability.  See *Gray v.
> Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).  Thus, if
> state-court remedies are no longer available because the prisoner failed to comply
> with the deadline for seeking state-court review or for taking an appeal, those
> remedies are technically exhausted, *ibid.*, but exhaustion in this sense does not
> automatically entitle the habeas petitioner to litigate his or her claims in federal
> court.  Instead, if the petitioner procedurally defaulted those claims, the prisoner
> generally is barred from asserting those claims in a federal habeas proceeding.
> *Id.*, at 162, 116 S.Ct. 2074; *Coleman*, *supra*, at 744–751, 111 S.Ct. 2546.

*See also Stone v. Moore*, 644 F.3d 342 (6th Cir. 2011); *Maupin v. Smith*, 785 F.2d 135, 138 (6th

Cir.1986).

When, as here, a habeas petitioner fails to raise issues in a direct appeal – originally or in

a delayed direct appeal under Ohio Appellate Rule 5(A) – there is no requirement that the state

courts make it plain that they relied on a state procedural rule to preclude consideration of the

petitioner's arguments in state court.  *Harris v. Reed*, 489 U.S. 255, 263, n. 9, 109 S.Ct. 1038

103 L.Ed.2d 308 (1989).  Thus, even though the various journal entries of the Ohio Court of

Appeals and the Ohio Supreme Court declining to allow a delayed direct appeal did not cite the

enforcement of Ohio Appellate Rule 4, it is enough for this court to conclude that it is clear that

the deadline to pursue a direct appeal had long since expired by the time Rackley sought leave to appeal on a delayed basis. Thus, under the holding of *Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), this court should conclude that the claims are now procedurally barred under Ohio law and, therefore, have been procedurally defaulted even in the absence of any reasoned explanation by the Ohio Court of Appeals or Ohio Supreme Court. This conclusion holds on each of the grounds Rackley asserts in his Ground One through Ground Six claims. He presented none of those claims – including his claims of ineffective assistance of trial counsel – to the Ohio courts in direct appeal.

Rackley's Ground Seven claim for habeas relief fares no better. The stated argument of Ground Seven is that Rackley's trial counsel failed to pursue an appeal on his behalf. Rackley bases this argument on the implied contention that he had a right to an appeal and to the appointment of appellate counsel. Rackley's petition and traverse also argue that the trial judge failed to tell him either in open court or in the judgment entry of conviction that he had a right to appeal even though he had pleaded guilty. Both of these contentions seem to be borne out in the record. Rackley's petition and traverse also contend, without any record evidence, that his trial counsel never told him of his right to appeal. Thus, in relation to Ground Seven, Rackley raises both court error and ineffective assistance of counsel issues. Rackley could have raised any federal due process concerns arising from these failures on direct appeal.

Rackley raised neither of these issues when he sought to initiate a delayed appeal. In addition, he did not comply with the basic requirements of Appellate Rule 5(A)(2). Under that rule, a defendant who seeks to appeal after the thirty day appeal period of Ohio App. R. 4(A) expires may file a "motion for leave to appeal" which "set[s] forth the reasons for the failure of the appellant to perfect an appeal as of right. Concurrently with the filing of the motion, the

movant shall file with the clerk of the trial court a notice of appeal in the form prescribed by App. R. 3 . . . ."  Although Rackley filed a notice of appeal (ECF Doc. 28-1, Page ID# 1236), he never filed a motion for leave to file a delayed appeal explaining that he had not perfected a timely direct appeal because he was not informed  by the court or his counsel of his right to appeal.  Indeed, Rackley's delayed appeal filing offered no explanation at all for why he'd not pursued a direct appeal.

Despite Rackley's failure to fulfill the motion requirement of App. R. 5(A)(2), the Ohio Court of Appeals still treated his notice of appeal as a motion for leave to file a delayed appeal. The court's journal entry stated: "Motion by Appellant, pro se, for leave to file delayed appeal is denied."  ECF Doc. 28-1, Page ID# 1255.  Nevertheless, Rackley's delayed appeal filing did not comply with the Rule 5(A)(2) requirement to set forth reasons for not having perfected a direct appeal.  His failure to comply with Rule 5(A) provides a separate basis for concluding that Rackley has procedurally defaulted any claim predicated on the trial court's failure to advise him of his appeal right or upon his trial counsel's ineffective assistance in failing to advise him of his right to pursue a direct appeal.[7]

The Ohio Court of Appeals denied Rackley's request for delayed appeal without any substantive explanation or indication that it was enforcing the procedural requirements of App. R. 5(A).  ECF Doc. 28-1, Page ID# 1255.  Rackley appealed to the Ohio Supreme Court.  In his

---

[7] It bears mentioning that Rackley did not fairly present any federal constitutional claim in his Rule 5(A) notice of appeal arising from the trial court's and trial counsel's failure to advise him of his appeal right. His notice of appeal didn't assign any errors at all, it merely consisted of a check box form that was partially filled out, purportedly to satisfy Ohio App. R. 4(B).  To "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis.  *Williams v. Anderson*, 460 F.3d 789, 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

memorandum in support of Supreme Court jurisdiction, Rackley included the explanation that he had not filed a direct appeal because the trial court had not notified him of his appeal rights. ECF Doc. 28-1, Page ID# 1284, 1285.  However, none of the propositions of law for which Rackley sought Supreme Court review included any mention of his lack of notice of his right to appeal.

Read in their totality, Rackley's delayed appeal filings make it clear that he never sought relief in the Ohio Court of Appeals or the Ohio Supreme Court on the ground that his due process rights were violated when he was not informed of his appeal rights.  Rackley's failure to fairly present any federal constitutional issue relating to his stated Ground Seven claim for relief or anything that may be implied from that claim (based on the content of his petition and his traverse) forces the conclusion that Ground Seven has been procedurally barred.

In addition, Rackley may not now file a new motion for delayed appeal asserting this ground.  Ohio courts apply *res judicata* principles to preclude the review of an issue in a second motion for leave to pursue a delayed appeal once the court of appeals has already decided the merits of a prior delayed appeal motion.  *See, e.g., State v. Ellis*, No. 05AP-1049, 2005-Ohio-6059, 2005 WL 3047431 (Franklin App. Nov. 15, 2005)("Res judicata bars successive App.R 5(A) motions when the appellate court has considered and decided the merits of a previous motion").  Thus, Rackley has forfeited the ability to now fairly present any federal constitutional issue to the Ohio Court of Appeals or Ohio Supreme Court.

"In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal."  *Williams v. Anderson*, 460 F.3d at 806. To the extent Rackley intends his Ground Seven claim to raise issues that he could not have raised on direct appeal (because they involved matters outside the trial court record), Rackley's

37

handling of his post-conviction proceedings must be examined.  Rackley filed two motions for post-conviction relief.  He filed the first, a motion to vacate or set aside the judgment of conviction, on July 15, 2014 while his delayed appeal proceedings were ongoing.  ECF Doc. 28-1, Page ID# 1328.  That motion made no mention of his appeal rights not having been given.  The motion was denied without opinion on July 22, 2014.  ECF Doc. 28-1, Page ID# 1339.  Rackley did not appeal that ruling; therefore, he never fairly presented any argument concerning his appeal rights that he could have made on collateral review to the Ohio Supreme Court.

Rackley filed his second motion for post-conviction relief, again styling it as a request to vacate or set aside his judgment of conviction, on March 15, 2015.  That motion raised the same issue contained in Rackley's Ground Seven claim in this matter.  ECF Doc. 28-1, Page ID# 1340.  After the trial court denied that motion, the Ohio Court of Appeals affirmed that judgment, enforcing the state procedural rule that prohibits untimely and second or successive post-conviction relief motions.  ECF Doc. 28-2, Page ID# 1580, 1586-1588.  Rackley did not appeal this ruling to the Ohio Supreme Court.  Thus, Rackley never fairly presented and has procedurally defaulted any outside-the-record federal constitutional claims arising from the fact that he was not advised of his appeal rights.

Whether because of his failure to present his seven grounds for relief on direct appeal or because of his failure to present them to the Ohio Supreme Court in any post-conviction collateral review proceeding, it is evident that Rackley cannot now obtain an Ohio court ruling on the merits of these claims.  As a result, all of the claims are procedurally defaulted.  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams v. Anderson*, 460 F.3d at 806, citing, *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); see also *Coleman v. Thompson*,

501 U.S. at 731-2, 111 S.Ct. 2546.  Next, the issue of whether Rackley has shown cause for his procedural defaults and prejudice arising therefrom must be examined.

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if his claim is not considered.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Implicit in all of Rackley's arguments in opposition to procedural default is his contention that he didn't appeal because neither the trial court nor his attorney told him he had a right to appeal.  He impliedly offers this as his cause for procedurally defaulting his federal claims.  Embedded within this argument is Rackley's further contention that he was unaware of and unable to research his legal rights at critical times.

Rackley's cause arguments are insufficient.  First, the Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817 (1977).  Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Furthermore, the

Sixth Circuit repeatedly has rejected petitioners' attempts to fault their ignorance of the law or prison resources for failing to comply with procedural requirements for filing court pleadings. *See, e.g.*, *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Hanna v. Conle*y, 49 F.3d 1193, 1197 (6th Cir. 1995)(finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default).

Second, as has been discussed extensively above, Rackley has not shown that he diligently investigated and protected his rights. For example, even though he was aware of his right to appeal by the time he filed his January 2014 motion for final appealable order, he still waited five more months to pursue a delayed direct appeal.[8] Then, when he sought delayed appeal, he failed to comply with Ohio App. R. 5(A)'s procedural requirement that he explain why he hadn't perfected an appeal as of right on time. Finally, Rackley did not raise the issue of his failure to be advised of his appeal rights as one of his assignments of error when he appealed the denial of his delayed appeal to the Ohio Supreme Court.[9] These facts were contributing causes of Rackley's procedural default of his federal constitutional clams. But they were not external to him. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753.

Because Rackley cannot demonstrate legally sufficient cause for his procedural defaults, the court need not address whether he suffered prejudice from the alleged violation of his constitutional rights. Even if the court were to examine the issue of prejudice, however, because

---

[8] The undersigned has already noted that none of Rackley's filings address what investigation of his rights he undertook during the 233 days between the date of his conviction and the date on which he moved for a final appealable order in January 2014.

[9] Ineffective assistance of trial counsel may not constitute cause for procedural default when, as here, the claim is itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Rackley pleaded guilty to the involuntary manslaughter and aggravated robbery, he waived any claim that he suffered prejudice from the contended violation of rights that occurred before his plea was accepted.  Because virtually all of the claims incorporated in Rackley's seven grounds for relief in this action relate to things that occurred at or before his guilty plea, he would not be able to granted habeas relief even if his claims had not been defaulted because he has waived those claims.  *United States v. Broce*, 488 U.S. 563 (1989); *Tollett v. Henderson*, 441 U.S. 258 (1973); *Brady v. United States*, 397 U.S. 742 (1970); *see also Baker v. United States*, 781 F.2d 85 (6th Cir. 1986).

Finally, as has been discussed above, this is not a case in which the court should overlook the petitioner's procedural defaults to prevent the fundamental miscarriage of justice resulting from the conviction of one who is actually innocent.  Rackley pleaded guilty.  He has not drawn the court's attention to any new evidence that would show he was innocent of the robbery and killing of Mitchell Perry.  He attempts to explain, but fails to discount, the import of the DNA Forensic Report that indicated that "The DNA profile obtained from [swabs of the knife handle found near Mitchell Perry] is a mixture of three or more individuals.  Steven Rackley [] cannot be excluded as a contributor to this DNA profile."  ECF Doc. 28-1, Page ID# 1449.  "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court  that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *McQuiggin v. Perkins*, 569 U. S. 383 (2013)(citing *Schlup v Delo*, 513 U.S. 298, 329 (1995)).  Here, Rackley cannot make the actual innocence showing that is necessary to excuse his procedural default of his claims.

I recommend the court find all of Rackley's claims to be procedurally defaulted.

### 2. Non-Cognizable Claims

Given the foregoing, it is not actually necessary to evaluate the remainder of Warden Sloan's arguments for denial of Rackley's petition or to reach the merits of his claims.  However, a review of Rackley's many filings reveals that he believes he has the right to challenge the trial court's jurisdiction over his murder case as well as to challenge the actions of the state courts leading up to his guilty plea.  Most of what Rackley complains about, however, could not be considered in a federal habeas petition, as demonstrated below.

Claims alleging only violations of state law are not cognizable upon federal habeas review and must be dismissed on that basis unless a fundamental violation of petitioner's due process rights has occurred.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (Citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Even if the state court made errors in the application of state law, no cognizable issue arises unless there has been a denial of fundamental fairness.  *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017).

State-court rulings on issues of state law may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

A habeas petitioner must do more than simply assert that a claim arises under a federal constitutional provision.  To be cognizable in federal habeas corpus, the petitioner must demonstrate that there were constitutional errors committed by the state court that were material to the outcome of the case, and that resulted in a denial of fundamental fairness to the petitioner. *Jameson v. Wainwright*, 719 F.2d 1125, 1126 (11th Cir. 1983), cert. denied, 466 U.S. 975 (1984); *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983).  To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Rackley's first ground for relief sets forth the main issues about which complains in this case.  Ground One rests entirely upon alleged violations of Ohio statutory laws and procedures. He claims the trial court lacked jurisdiction over his murder case because: (i) the case did not enter the criminal justice system via a complaint predicated on an affidavit of the police; (ii) no

probable cause determination was made in a municipal court by a municipal judge; (iii) he was wrongly taken to the county jail without any arrest warrant after serving two days in the Shaker Heights city jail on a traffic contempt citation; (iv) the murder case was never presented to Timothy McGinty, the person who became the county prosecuting attorney after the departure of Prosecutor Bill Mason; and (v) the murder case charges were never properly presented to a grand jury.  Rackley claims that these state law violations in turn breached his Fourth, Fifth and Fourteenth Amendment rights.

Although Rackley correctly asserts that the Shaker Heights Police never filed a complaint based on a sworn affidavit, the record confirms that an assistant county prosecutor filed a criminal complaint on her oath on June 22, 2012, charging Rackley with aggravated murder, aggravated robbery, and kidnapping.  (ECF Doc. 28-1, Page ID# 1310-1311).  It also true that no municipal judge conducted a preliminary hearing or made a probable cause determination.  But, contrary to Rackley's argument, a Cuyahoga County grand jury did issue an indictment on June 27, 2012 charging Rackley with aggravated murder, aggravated robbery, kidnapping and evidence tampering.  (ECF Doc. 28-1, Page ID# 1180-1182)  The grand jury foreperson and then-Cuyahoga County Prosecuting Attorney Bill Mason both signed the indictment.  The Cuyahoga County Prosecutor's case synopsis indicates that the matter was to be presented for "direct indictment" before the Cuyahoga County Grand Jury.  ECF Doc. 28-2, Page ID# 1644. The Cuyahoga County Court of Common Pleas appearance docket confirms Rackley's case was an "original action received from Cuyahoga County Prosecutor's Office."  (ECF Doc. 28-1, Page ID# 1384).

In essence, Rackley challenges the constitutionality of being indicted without prior municipal court proceedings which lead to a probable cause determination by a judge.  He

concludes that without these things, there was no basis upon which to arrest him on the murder, robbery and kidnapping charges, no basis to transport him to the county jail after he served two days in jail on a traffic-related contempt citation, and no basis for invoking the jurisdiction of the common pleas court on the murder case. Most of his filings below challenged the trial court's jurisdiction.

Rackley's contentions do not reveal any violations of state law that denied him a fundamentally fair proceeding or any violation of his due process rights. The indictment signified that a grand jury found probable cause to support the charges based on the sworn complaint of the assistant prosecutor. This process is called direct indictment. "The term direct indictment simply means that no criminal complaint was first filed against a defendant. There is no constitutional or statutory requirement that a criminal prosecution begin by complaint. It is lawful for a prosecutor to bring a criminal charge initially by indictment." *Johnson v. State*, No. 2:12-cv-972, 2013 U.S. Dist. LEXIS 7172, 2013 WL 209590, at *3 (S.D. Ohio Jan. 17, 2013). *See also United States v. Burnett*, No. 3:14-00173, 2015 U.S. Dist. LEXIS 52364, 2015 WL 1906026, at *4 (M.D. Tenn. April 20, 2015) (finding that the defendant did not have a constitutional right to a preliminary hearing and the indictment satisfied "the whole purpose and justification of the preliminary hearing"). The Constitution requires that the defendant receive fair notice of the criminal charge against him and that those charges be supported by a finding of probable cause that he committed the crime.[10] *See United States v. Pandilidis*, 524 F.2d 644, 648

---

[10] Rackley repeatedly contends that he did not have fair notice of the involuntary manslaughter charge to which he pleaded guilty. But the Count Two aggravated murder charge actually put him on notice that the state was contending he purposely caused the death of Mitchell Perry while committing or attempting to commit aggravated robbery. ECF Doc. 28-1, Page ID# 1180. Rackley and his lawyer agreed to a plea agreement under which Rackley would plead guilty to the lesser included offense of involuntary manslaughter. Ohio Rev. Code § 2903.04 indicates the elements of involuntary manslaughter: "No person shall cause the death of another . . . as a proximate result of committing or attempting to commit a felony." Rackley also pleaded guilty to aggravated robbery. There can be no good faith argument that

(6th Cir. 1975).  An indictment affords those constitutional protections.  It is constitutionally sufficient for a criminal charge to be initiated by indictment rather than a complaint.  *See Smith v. Eberlin-Miller*, No. 2:09CV468, 2009 U.S. Dist. LEXIS 130418, 2009 WL 2246157, at *2 (S.D. Ohio July 23, 2009); *Zaffino v. Konteh*, No. 5:05CV1485, 2006 U.S. Dist. LEXIS 60098, 2006 WL 2360902, at *3-5 (N.D. Ohio Aug.15, 2006) (Economus, J.) (concluding that no constitutional due process claim exists where a trial court fails to provide a defendant with a preliminary hearing prior to indicting him); *Gibson v. O'Connor*, No. 2:12-cv-120, 2012 U.S. Dist. LEXIS 38788, 2012 WL 995641, at *4 (S.D. Ohio March 22, 2012) ("[A]ny constitutional challenge to the state court's failure to hold a preliminary hearing fails."); *Smith v. Ferrero*, No. 5:17-cv-0150, 2017 U.S. Dist. LEXIS 89840, at *8-9 (N.D. Ohio June 12, 2017).  Any argument predicated on the lack of municipal court process is non-cognizable and implicates no federal constitutional issues.

Rackley's argument that the Ohio courts lacked subject matter jurisdiction over his case is also not cognizable.  "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) (per curiam); *accord Rhode v. Olk–Long*, 84 F.3d 284, 287 (8th Cir.1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir.1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F.Supp.2d 1004, 1013 (N.D. Il. 2001).  As the Supreme Court has indicated for a century, "there is nothing in the clauses of the 14th Amendment guarantying [*sic*] due process and equal protection which converts an issue respecting the

---

Rackley didn't have fair notice of the substance of the involuntary manslaughter charge since the only difference between it and aggravated murder was the *elimination* of the requirement that the state prove purpose to cause death.  And if he had any concerns about what the elements of that offense were, it was incumbent upon him to address those to the trial court judge when she conducted the plea colloquy.  He did not.  Even if this court were to address the merits of this argument, therefore, it is evident Rackley has raised no constitutional issue arising from the amendment of the indictment.

jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369, 37 S.Ct. 165, 61 L.Ed. 367 (1917). Whether an indictment, information, or complaint is sufficient to confer jurisdiction on a trial court is likewise an issue of state law which is not cognizable on habeas review. *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir.1994); *Rose v. Johnson*, 141 F.Supp.2d 661, 694 (S.D.Tex.2001).

The Ohio Supreme Court confronted Rackley's jurisdictional argument in affirming the denial of Rackley's state habeas petition. The Supreme Court's opinion stated:

> Rackley was charged in an indictment issued by the Cuyahoga County Grand Jury, and he pleaded guilty and was ultimately sentenced on that indictment. *State v. Rackley*, 2015-Ohio-4504, ¶ 3-4. Therefore, the trial court possessed the requisite jurisdiction to accept his guilty pleas and sentence him to prison. *See* R.C. 2931.03.

*State ex rel. Rackley v. Sloan, Warden*, 2016-Ohio-3416, ¶ 7, ECF Doc. 28-3, Page ID# 1875.

Even if Rackley's jurisdictional claim were cognizable and implicated some federal constitutional issue, this court would be unable to rule in Rackley's favor. Habeas law requires this court to defer to the reasoned judgments of the state courts. The Ohio Supreme Court's conclusion that the trial court had jurisdiction over Rackley's case binds this court, and this court must defer to the Ohio Supreme Court's interpretation of Ohio law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus") (citing *Estelle*, 502 U.S. at 67-68). The same is true for state court determinations of federal constitutional law. "State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15 (2013).

Finally, Rackley may not challenge the ground for his initial arrest in this proceeding. Although he argues that he was arrested on a contempt citation related to an earlier traffic case – in violation of his Fourth Amendment rights – he is not now being held in custody as a result of that earlier court action.  As a result, he has no claim under 28 U.S.C. § 2254(b)(1) relating to that arrest.  In summary, Rackley's Ground One claims may not be considered by this court because he raises only non-cognizable state law claims and no deprivation of fundamental fairness has occurred.

## V.       Recommendation Regarding Certificate of Appealability

### A.       Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The

48

statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.

If the Court accepts the foregoing recommendations concerning the statute of limitations, and procedural default, Rackley would not be able to show that the court's ruling on the procedural question is reasonably debatable.  As noted above, Rackley has not denied that his

49

petition is untimely, and he has provided no basis for concluding that he is entitled to a delayed

commencement of the limitations period under § 2244(d)(1)(B), (C) or (D), that he is entitled to

statutory tolling under § 2244(d)(2) beyond what the undersigned is recommending, or that he is

entitled to equitable tolling.  Nor has Rackley submitted new, reliable evidence demonstrating

that his is the rare petition which should be granted habeas review, despite its untimeliness,

because he is actually innocent.  Thus, the resolution of the limitations issue is not reasonably

debatable, and the Court should conclude that Rackley is not entitled to a certificate of

appealability.  Similarly, the conclusion that Rackley failed to fairly present his federal

constitutional issues to the Ohio Supreme Court in accordance with the procedural requirements

of Ohio law cannot reasonably be debated.

## VI.     Recommendations

Because the AEDPA statute of limitations bars all of Rackley's grounds for relief and

because the claims are all procedurally defaulted,  I recommend that the court deny Rackley's

petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety.  I further recommend

that Rackley not be granted a certificate of appealability.

Dated: March 26, 2018

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  See
*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985),
reh'g denied, 474 U.S. 1111 (1986).